UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HONORABLE,

    *Plaintiff*,                             CASE NO. 2:15-CV-10190-MFL-PTM

*v.*

COMMISSIONER OF                   DISTRICT JUDGE MATTHEW F. LEITMAN
SOCIAL SECURITY,                MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g).

### II.    REPORT

#### A.    Introduction and Procedural History

This case was referred to the undersigned magistrate judge, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), by Notice of Reference to review the Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff James Honorable was almost fifty-one years old at the time of the administrative hearing on July 9, 2014. (Transcript, Doc. 10 at 30.) Plaintiff's past work

included work most recently as a military police officer in the United States Army from 2000-2012, as an armored car driver for less than one year, as a security guard for one year, and as a machine operator in a steel processing plant for six years. (Tr. at 216.) Plaintiff filed his claim on March 15, 2013, alleging that he became unable to work on December 24, 2011. (Tr. at 175.) The claim was denied at the initial administrative stage. (Tr. at 98.) In denying Plaintiff's claims, the Commissioner considered affective disorders and essential hypertension. (*Id*.) On July 9, 2014, Plaintiff appeared before Administrative Law Judge ("ALJ") Martha Gasparovich, who considered the application for benefits de novo. (Tr. at 25-76.) In a decision dated August 26, 2014, the ALJ found that Plaintiff was not disabled. (Tr. at 7-24.)

On November 18, 2014, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On January 18, 2015, Plaintiff filed the instant suit, seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. The ALJ's Five-Step Sequential Analysis

The "[c]laimant bears the burden of proving his [or her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). While, in general, the claimant "is responsible for providing the evidence" to make a residual functional capacity ("RFC") assessment, before a determination of not disabled is made, the Commissioner is "responsible for developing [a claimant's] complete medical history, including arranging for a consultative examination[] if necessary." 20 C.F.R. § 404.1545(a)(3).

Title II, 42 U.S.C. §§ 401-434, provides DIB to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI, 42 U.S.C. §§ 1381-1385, provides Supplemental Security Income ("SSI") to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

> expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by" an impairment that precludes performance of past relevant work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (cited with approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007)). If the analysis reaches step five, the burden shifts to the Commissioner to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering

4

relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(a)(4)(g)); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

### D. The ALJ's Findings

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at Step One that Plaintiff met the insured status requirements through December 31, 2017, and that Plaintiff had not engaged in substantial gainful activity since January 29, 2013, the amended alleged onset date. (Tr. at 12.) At Step Two, the ALJ found that Plaintiff's conditions of hypertension, post-traumatic stress disorder (PTSD), degeneration and hallux vagus [sic] deformities of the bilateral feet, headaches, degenerative disc disease and osteoarthritis of the shoulders were "severe" within the meaning of 20 C.F.R. § 404.1520 and § 416.920. (Tr. at 13.) At Step Three, she found that Plaintiff did not have an impairment or combination of impairments that met or was the medical equivalent of a listing in the regulations. (Tr. at 13-15.) At Step Four, she found that Plaintiff could perform light work with several limitations and was unable to perform any past relevant work. (Tr. at 15-20.) She also found that Plaintiff was forty-nine years old on the alleged onset date, putting him into the "individual closely approaching advanced age" category. (Tr. at 20.) At Step Five the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there were jobs existing in the economy in significant numbers that Plaintiff could perform, and therefore Plaintiff was not disabled. (Tr. at 20-21.)

### E. Administrative Record

A review of the medical evidence of record shows that during his years of military service, Plaintiff was involved in an explosion in Afghanistan in 2011. (Tr. at 270.) Plaintiff

was treated for back pain, shoulder pain, PTSD, insomnia, memory problems, tinnitus, headaches, acid reflux, and hypertension since he returned from military service. (Tr. at 284-484.)

Plaintiff was examined by Dr. Cynthia Shelby-Lane, M.D., of Disability Determination Services (DDS), on July 31, 2012. (Tr. at 267-74.) Dr. Shelby-Lane noted that Plaintiff brought a cane but did not use it, and that Plaintiff was alert, awake, and oriented. (Tr. at 269.) Dr. Shelby-Lane also noted that Plaintiff's speech was slow, that he has a slight stutter, and that examination revealed some memory problems. (Tr. at 270.) She diagnosed history of chronic back pain with dextroscoliosis, chronic shoulder pain, hypertension, tinnitus, headaches, post-traumatic brain injury, insomnia with nightmares, PTSD, esophageal reflux, and erectile dysfunction. (Tr. at 270.) Dr. Shelby-Lane concluded that Plaintiff "will need long-term ongoing care for his post-traumatic stress disorder and traumatic brain injury." (*Id*.)

On February 1, 2013, a Medical Source statement was completed by Michelle Sharp, PhD, PTSD Program, Detroit VAMC. Dr. Sharp opined that Plaintiff has moderate limitations as to understanding and remembering simple instructions, marked limitations as to understanding and remembering complex instructions and moderate limitations as to carrying out complex instructions and was otherwise mildly limited in the ability to understand, remember and carry out instructions. (Tr. at 277.) She indicated that "[d]uring treatment, vet has difficulty remembering material covered in previous sessions[,]" that he has "[t]rouble with concentration/focus; distractibility" and "extreme anxiety when around people or exposed to noise." (*Id*.) As to interaction with others, Dr. Sharp indicated that Plaintiff was markedly limited in his ability to interact appropriately with the public, supervisors and co-workers and was moderately limited in his ability to respond appropriately to work situations and changes

6

in routine. (Tr. at 278.) Dr. Sharp explained that Plaintiff "experiences significant anxiety around others. Also has irritability, anger due to PTSD" and "reports trouble with changes in routine due to poor memory – having to ask others to repeat strains work relationships." (*Id*.)

On February 28, 2013, Dr. Saroj Chowdhury completed a physical Residual Functional Capacity (RFC) Assessment wherein he opined that Plaintiff could not sit, stand, or work any hours in a day, could only sit for 30 minutes at a time, stand for 15 minutes at a time, could lift only 5 pounds occasionally or frequently, could perform occasional bending, stooping, manipulation of both hands and raise his arms over shoulder level. (Tr. at 281.)

In addition, the record contains a July 24, 2013 decision by the Veteran's Administration granting Plaintiff disability benefits at the 100% rate despite his 70% disabled rating, beginning on April 19, 2012. (Tr. at 257.) The decision was based on a finding that Plaintiff "is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." (Tr. at 262.)

At the administrative hearing, Plaintiff testified that he has difficulty concentrating and remembering, has pain in his shoulders and back, and can only stand or sit for 15 minutes at a time because he has to "constantly move" and change positions. (Tr. at 34, 35-36.) Plaintiff walks only within the house or to the car for short distances and going up or down stairs causes him pain. (Tr. at 34-35.) Plaintiff stated that he would not even lift a gallon of milk for fear he would drop it. (Tr. at 35.) Plaintiff takes frequent naps throughout the day, "maybe eight to 10 times" because his medication makes him "sleepy all the time." (Tr. at 35-36.) Plaintiff also testified that he gets headaches "at least about four times a day[,]" that he has PTSD, depression, that he has flashbacks "[m]aybe three times a week" and anxiety attacks on a daily

7

basis. (Tr. at 36-37.) Plaintiff stated that he does not clean, do laundry, shop or cook, and that his fiancée does these jobs. (Tr. at 38.)

The ALJ asked the vocational expert (VE) to consider an individual with Plaintiff's background who could

> stand and walk six of eight hours; lift 20 pounds occasionally and 10 pounds frequently; could only occasionally climb, balance, stoop, kneel, crouch, or crawl; is limited to simple, routine, one-to-three step tasks in a low-stress environment defined as no quick decision making and no quick judgment required on the job; there could be no interaction with the public and only occasional interaction with coworkers; the individual would need a non-production pace setting; there could be no reaching above shoulder level bilaterally.

(Tr. at 40.)

The VE responded that such a person could perform 8,500 maid and housekeeping cleaner jobs, and the 14,000 machine feeder and off-bearer jobs available in the State of Michigan at the light level. (Tr. at 40-41.) When asked to limit the person to jobs requiring only two hours of standing and walking, and requiring a sit/stand option, the VE responded that such a person could perform the 3,100 general office clerk and document preparer jobs, the 400 surveillance system monitor jobs, and the 600 tester/sorter/sampler jobs available in the Michigan economy. (Tr. at 41-42.) If a person were off-task one-third of the day, or needed to take unscheduled breaks approximately three to four times per week for periods of up to 30 minutes at a time, the VE indicated that such restrictions would preclude performance of any job. (Tr. at 42.) The VE answered that his testimony was consistent with the Dictionary of Occupational Titles (DOT) expect that the DOT does not address sit/stand options. (Tr. at 42.)

  **F. Governing Law and Analysis**

  **1. Legal Standard**

The ALJ determined that Plaintiff had the RFC

8

> to perform light work as defined in [the regulations], as the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant is unable to reach above shoulder level bilaterally, is able to occasionally climb, balance, stoop, kneel, crouch or crawl. In addition, the claimant is able to perform simple, routine one to three step tasks that are performed in a low stress, non-production pace setting, that do not involve quick decision making and judgment and that involve no interaction with the public and occasional interaction with supervisors and co-workers.

(Tr. at 15-16.) The regulations define light work as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

   **2.    Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B).   The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish

9

the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §

404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"), and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL

180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i) [D]aily activities;

(ii) The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

12

>   (v)   Treatment, other than medication, . . . received for relief of . . . pain;
>
>   (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### 3.  Analysis

Plaintiff contends that the ALJ's RFC determination and credibility analysis were not made in proper compliance with the applicable standards and that they are not supported by substantial evidence. (Doc. 12 at 11-16.) In addition, Plaintiff contends that the ALJ erred in evaluating and failing to properly explain her evaluation of Plaintiff's disability rating from the Veteran's Administration. (Doc. 12 at 16-18.)

#### a. *Res judicata standards*

13

Although neither party addresses the issue, I note that there was a previous decision by an ALJ dated January 8, 2013. (Tr. at 77-91.) In the Sixth Circuit, a prior decision by the Commissioner can preclude relitigation in subsequent cases:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (acquiescing to *Drummond*, 126 F.3d at 837. The regulations also explicitly invoke *res judicata*: An ALJ can dismiss a hearing request where "res judicata applies in that we have made a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. The *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review.").[1] The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. Soc. Sec. Admin., *Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999). These include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," or whether she meets or equals a listing. *Id.* In other words, even though the first ALJ did not

make any findings concerning later periods, his or her decision still applies to those periods absent the requisite proof.

To overcome the presumption that the claimant remains able to work in a subsequent period, the claimant must proffer new and material evidence that his or her health declined. *See Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier decision. *See Bailey ex rel. Bailey v. Astrue*, No. 10-262, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). Thus, as applied in this Circuit, the AR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding. *See Makinson v. Colvin*, No. 5:12CV2643, 2013 WL 4012773, at *5 (N.D. Ohio Aug. 6, 2013) (adopting Report & Recommendation) ("[U]nder *Drummond* and AR 98-4(6), a change in the period of disability alleged does not preclude the application of *res judicata*.") (citing *Click v. Comm'r of Soc. Sec.*, No. 07-13521, 2009 WL 136890, at *4 (E.D. Mich. Jan. 16, 2009))); *cf. Randolph v. Astrue*, 291 F. App'x 979, 981 (11th Cir. 2008) (characterizing the Sixth Circuit's rule as creating a presumption); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985))).

In *Drummond*, for example, the court held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 838-39, 843. *See also*

*Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (noting that in order to win benefits for a period after a previous denial, the claimant "must demonstrate that her condition has so worsened in comparison to her condition [as of the previous denial] that she was unable to perform substantial gainful activity"); *Casey*, 987 F.2d at 1232-33 (same). The Sixth Circuit made this clear in *Haun v. Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine de novo the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004). The Sixth Circuit has consistently anchored the analysis on the comparison between "circumstances existing at the time of the prior decision and circumstances existing at the time of the review . . . ." *Kennedy*, 247 F. App'x at 768.

As discussed below, the Court finds that the July 24, 2013, VA disability decision may have provided sufficient evidence of changed circumstances such that the ALJ was not bound by the earlier ALJ decision, and was thus obligated to consider Plaintiff's condition during the unadjudicated period.

### b. *The ALJ Failed to Explain the Weight Given to the VA's Decision*

Taking Plaintiff's second issue first, "a disability rating from the Veteran's Administration is entitled to consideration, but we have not specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013), *citing Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984); *accord* SSR 06-03, 2006 WL 2329939, at *3 (Aug. 9, 2006) ("Evidence of a disability decision by another governmental [] agency cannot be ignored and must be considered."). Several district courts within the Sixth Circuit have indicated that the ALJ must assign some weight to the VA's decision and articulate her reasons for the weight

16

given. *See King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 726 (E.D. Mich. 2011) ("disability determinations of other governmental agencies should be taken into account."); *Partin v. Comm'r of Soc. Sec.*, No. 1:09-cv-368, 2010 WL 3779304, at *2 (W.D. Mich. Sept. 22, 2010) ("the ALJ is not bound by the VA's determination; however, as plaintiff points out, the law requires that the VA findings be taken into consideration."); *Gibson v. Astrue*, No. 09-105-GWU, 2010 WL 148807, at *5 (E.D. Ky. Jan. 14, 2010) (The ALJ should have addressed the VA's disability finding); *Proctor v. Comm'r of Soc. Sec.*, No. 1:09-cv-127, 2010 WL 4026083, at *9 (S.D. Ohio Sept. 17, 2010) ("The Sixth Circuit, by implication, requires that the ALJ consider the decision of the Veteran[s] Administration and to articulate reasons for the amount of weight it assigns to the decision."). In addition, the Fourth, Fifth, Ninth, and Eleventh Circuits have held that a VA decision is entitled to "great weight." *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *Chambliss v. Heckler*, 269 F.3d 520, 522 (5th Cir. 2001); *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984).

Here, as in *Ritchie*, the ALJ noted that she was not bound by the VA disability decision. In addition, she appeared to recognize the *res judicata* issue. The ALJ's entire consideration of the VA decision reads:

> I note that VA disability rating verification dated July 24, 2013 indicates that the claimant remains 70% disabled but will be paid at the 100% disability rate (Exhibit B9E). This suggests that the severity of his impairments have not worsened since the previous hearing decision. In addition, I give this assessment little weight during the disability analysis, as VA benefits are based upon different standards and criteria that Title II disability and disability insurance benefits.

(Tr. at 18.) As noted above, the prior ALJ decision which has the preclusive effect was dated January 8, 2013. The ALJ then concludes that the July 24, 2013 VA decision somehow

17

"suggests" that Plaintiff's condition has not worsened since the prior ALJ decision. The ALJ was perhaps relying on the fact that only six months had passed between the prior ALJ decision and the VA decision, but even that small passage of time could result in changed severity. However, this is not a case where the prior VA decision was so distant in time as to be nearly irrelevant. *Cf., Ritchie*, 540 F. App'x at 511 (holding that a VA disability decision rendered in 1987 was so far removed from the question of whether the claimant was disabled between 2004 and 2009 that the ALJ was not obligated to discuss the weight given in detail). The ALJ's reasoning is therefore not adequate to justify ignoring the VA decision. Because the VA decision post-dates the previous ALJ decision by six months, I find that this decision may provide sufficient evidence of deterioration in Plaintiff's condition which could constitute "changed circumstances," thus requiring that the ALJ to make new findings regarding the unadjudicated period.

In addition, simply noting that there is a difference in standards applied to VA decisions and social security decisions alone without explanation as to how those differences affect the findings is insufficient to explain why the VA decision should be ignored. The need for explanation as to why a VA decision was rejected is "particularly true in cases, such as this, where the VA's disability determination was more recently dated than the other medical evidence in the record relied upon by the ALJ." *Briskey v. Astrue*, No. 1:09-CV-2705, 2011 WL 672553, at *5 (N.D. Ohio Feb. 15, 2011). I therefore suggest that substantial evidence does not support the ALJ's decision.

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The

18

court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

I suggest that proof of disability is not so overwhelming as to justify remand for an award of benefits. I therefore recommend that the case be remanded under sentence four of 42 U.S.C. § 405 (g) to the Commissioner to consider the VA decision and to explain, with reference to medical findings, the weight given the VA decision. Since remand is recommended, I need not address Plaintiff's other issues.

### G. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not supported by substantial evidence. Therefore, the case should be remanded under sentence four of 42 U.S.C. § 405 (g) to the Commissioner to consider the VA decision and to explain, with reference to medical findings, the weight given the VA decision.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to

another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 19, 2015         S/ Patricia T. Morris
                                           Patricia T. Morris
                                           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: November 19, 2015        By s/Kristen Krawczyk
                                          Case Manager to Magistrate Judge Morris